1
2
3
4
5
6                      IN THE UNITED STATES DISTRICT COURT
7                        FOR THE DISTRICT OF ARIZONA
8
9    United States of America,          )
                                        )
10            Plaintiff,                 )         CR-10-955-TUC-RCC (CRP)
                                        )
11   vs.                                )
                                        )         **REPORT &**
12                                      )         **RECOMMENDATION**
     Daniel Contreras,                  )
13                                      )
              Defendant.                )
14                                      )
     _____)
15

16          Pending before the Court is a Motion to Suppress Statements filed by Defendant on

17   November 22, 2010. (Doc. 22.) The government filed a response to the Motion. (Doc. 34.)

18   Defendant did not file a reply.

19          This matter was set for evidentiary hearing and evidence was heard on January 12,

20   2011. Defendant Daniel Contreras was present and represented by counsel. This matter was

21   submitted following oral argument at the conclusion of the hearing and was taken under

22   advisement.

23          Having now considered the matter, the Magistrate Judge recommends that the District

24   Court, after its independent review, deny Defendant's Motion to Suppress.

25                              **FACTUAL FINDINGS**

26   **A.      Agent Ashby's Testimony**

27          Border Patrol Agent Jared Ashby testified on behalf of the government. Agent Ashby

28   has served as a Border Patrol agent for four and a half years. He is also a certified

1   Emergency Medical Technician.  On March 24, 2010, Agent Ashby was on duty and

2   stationed at a Border Patrol camp between Douglas and Lordsburg.  At approximately 3:00

3   or 4:00 p.m., Agent Ashby received a report from dispatch that Border Patrol had received

4   a report that a vehicle matching Defendant's vehicle's description was transporting narcotics.

5   Another Border Patrol Agent, Agent Gonzalez, spotted Defendant's vehicle driving

6   southbound and initiated a stop; Agent Ashby arrived at the vehicle just moments later.

7   When Agent Ashby arrived at the scene, Defendant and a passenger had been removed from

8   the car.  Agent Ashby observed burlap sacks in the truck bed.  Agent Ashby assisted Agent

9   Gonzalez by separating Defendant from the passenger.  Agent Ashby testified that he could

10  not recall whether he asked Agent Gonzalez whether Defendant had been read his *Miranda*

11  rights, or whether Agent Gonzalez told Agent Ashby that Defendant had been read his

12  *Miranda* rights.  Regardless, Agent Ashby knew that Defendant had been *Mirandized* before

13  he spoke to Defendant.

14        Defendant and Agent Ashby conversed in English. Defendant asked Agent Ashby for

15  a cigarette.  Agent Ashby permitted Defendant to smoke a cigarette while standing,

16  handcuffed, next to his vehicle.  Agent Ashby asked Defendant why he would drive his

17  vehicle with what appeared to be marijuana exposed in the bed of the truck.  Defendant told

18  Agent Ashby that the passenger of the vehicle had forced him to take it.  Defendant stated

19  that he had expected four to five bundles but the passenger had convinced him to haul more

20  than that.  Agent Ashby described Defendant as calm and collected.  Agent Ashby did not

21  observe that Defendant appeared ill. Defendant did not ask Agent Ashby for medication, nor

22  did he mention having any health problems.  Agent Ashby testified that he did not observe

23  Defendant being put in the back of a Border Patrol vehicle at any time prior to transport.

24        Agent Ashby transported Defendant to Douglas, approximately 40 minutes away, in

25  his Border Patrol vehicle.  The vehicle is a 2007 or 2009 Chevy Tahoe with leather seats and

26  air-conditioning; Defendant rode in the backseat which is separated from the front seat by

27  metal mesh.  During the drive, Agent Ashby asked Defendant to give him a synopsis of the

28  events leading up to his arrest.  Defendant told Agent Ashby that he lived in Tucson and that

he had driven to Douglas with his brother. He dropped his brother off at the McDonald's in Douglas and met with a man who gave him a specific mile marker and a cell phone to facilitate a drug pick-up. Defendant drove to the designated mile marker, picked up the passenger and what he believed to be marijuana, then intended to return to the McDonald's. Defendant intended to "swap" his brother for the marijuana when he arrived at the McDonalds. Agent Ashby described Defendant's demeanor during the drive as calm and collected. Defendant did not appear ill and did not ask for medication.

When they arrived at the Douglas Border Patrol station, Agent Ashby placed Defendant in a holding cell for 15 to 20 minutes. Defendant had access to water and a restroom while in the holding cell. Agent Ashby testified that Defendant appeared calm as he was placed in the holding cell and when he was removed 15 to 20 minutes later. At no time did Defendant appear ill. Defendant did not ask for medication or food. Defendant was offered food upon arrival and every three to four hours after that.

Agent Ashby retrieved Defendant from the holding cell for an interview. Defendant was not handcuffed during the interview. Agent Gonzalez was also present for some of the interview. Agent Ashby testified that he did not read Defendant his *Miranda* rights, even though that it is standard Border Patrol policy to re-read a defendant his *Miranda* rights prior to interviewing them at the station. During the interview, Defendant again provided Agent Ashby with a synopsis of the events leading up to his arrest. Defendant did not appear ill during the interview and he remained calm. Defendant did not ask to terminate the interview, did not report feeling ill during the interview and did not ask for medications during the interview. At some point during the interview, Defendant told Agent Ashby that he suffered from medical conditions including high blood pressure, Factor V Leiden disease, Wegener's disease, asthma, diabetes, a previous heart attack and a gunshot wound and that he had medications which he would need to take by the next day. Defendant asked to make a phone call and Agent Ashby permitted him to do so. Agent Ashby estimated that the interview lasted four to five hours. At the end of the interview, Defendant was released from Border Patrol custody.

**B.      Agent Gonzalez' Testimony**

Border Patrol Agent Alan Gonzalez testified on behalf of the government.  Agent Gonzalez has worked as a Border Patrol agent for more than four years.  Prior to his employment with Border Patrol, Agent Gonzalez served as an Army medic.  Agent Gonzalez is also a certified Emergency Medical Technician.  On March 24th, 2010, Agent Gonzalez was on duty and stationed at a Border Patrol camp located between Douglas and Lordsburg. Agent Gonzalez received a report from dispatch that Border Patrol had received a report that a vehicle matching Defendant's vehicle's description was transporting narcotics.  Agent Gonzalez observed Defendant's vehicle traveling south toward Douglas and initiated a stop. Agent Gonzalez asked Defendant and the passenger in the vehicle to step out of the truck. After instructing Defendant and the passenger to sit down, he read *Miranda* warnings to both of them.  Defendant stated that he understood his rights; he did not invoke his right to an attorney or his right to remain silent.

According to Agent Gonzalez, Agent Ashby arrived at the scene five or ten minutes after the stop.  Defendant was permitted to smoke a cigarette.  Agent Gonzalez began questioning Defendant at the scene; he and Defendant spoke to each other in English. Defendant acknowledged that the burlap sacks in his truck bed were marijuana.  He also admitted to being a former member of the Sureño gang.  Agent Gonzalez described Defendant's demeanor as calm.  Defendant appeared to be in good health; he did not mention health problems or ask for medication.  Agent Gonzalez gave Defendant an opportunity to identify and collect personal items from his vehicle; Defendant was then loaded into Agent Ashby's vehicle for transport to Douglas.  Agent Gonzalez loaded the passenger into his "Kilo" – a Border Patrol F-250 with a cage in the truck bed.  Agent Gonzalez estimated that the agents left the scene to transport Defendant and the passenger at approximately 5:00 p.m.

Agent Gonzalez testified that when they arrived at the Douglas Border Patrol station, Defendant was placed in a holding cell for no more than thirty minutes, then removed from the holding cell for an interview.  Agent Gonzalez recalls re-reading Defendant's *Miranda* rights to him and asking Defendant to sign a waiver of rights form.  Agent Gonzalez was not

present for the entire interview; he testified that Agent Ashby conducted the bulk of the interview.   Agent Gonzalez described Defendant's demeanor as calm and stated that Defendant did not appear ill.   Defendant did not ask for medication or report feeling ill during the interview.  Defendant asked for food, which was provided.  Defendant was also permitted to use the telephone.   At the end of the interview, Agents Gonzalez and Ashby contacted Agent Caruso at DEA, who said he would take the case but advised that Defendant be released due to his medical conditions.   Agent Gonzalez estimated that Defendant was released at 3:00 a.m. or 4:00 a.m. on the morning following his arrest, when the agents delivered him to a nearby Chevron station where his wife picked him up.

**C.      Defendant's Testimony**

Defendant also testified at the hearing.   According to Defendant, he suffers from numerous medical conditions, including: "Wegener's," which he described as an "immunity deficiency disease;" Factor V Leiden deficiency disease, which causes him to develop blood clots; asthma; diabetes; esophagitis; arthritis; chronic pain syndrome; anxiety and depression. (TR 73-74, 79.)  Defendant takes multiple medications for these conditions and drives with a handicap license plate.

On the day of his arrest, Defendant's vehicle was stopped by Agent Gonzalez at approximately 4:15 p.m.  Defendant testified that Agent Gonzalez approached him with his gun drawn and ordered him to get out of his vehicle.   Agent Gonzalez moved Defendant to the back of the vehicle, read him his *Miranda* rights and then put him in the back of a hot and windowless truck.   Defendant testified on re-direct that he told Agent Gonzalez about his health problems before he was loaded into the back of the truck.    After spending approximately forty minutes in the back of the truck, Defendant knocked on the door and announced that he could not breathe and was having an anxiety attack.  An agent whom Defendant identified as "Gillespie" let him out of the truck and offered him a cigarette.[1]  (TR

_____

[1] Defendant clarified on cross-examination that he thought Agent Ashby's name was Gillespie. (TR 94.)

- 5 -

77.)  On direct examination, Defendant testified that he told the agents about his health problems when he was released from the back of the truck.  The agents began questioning Defendant regarding the marijuana discovered in his vehicle; Defendant talked to the agents at the scene for approximately 20 to 30 minutes before he was loaded into Agent Ashby's Chevy Tahoe.  At no time during the interview did Defendant assert his *Miranda* rights.

While being transported to the Douglas Border Patrol station, Defendant talked to Agent Ashby, who encouraged him to contact the person who was expecting delivery of the marijuana.  Agent Ashby offered Defendant water, which Defendant accepted.  Defendant was feeling anxious and nervous.  Defendant estimated he arrived at the Border Patrol station between 5 p.m. and 5:30 p.m.

According to Defendant, the agents did not re-read him his *Miranda* rights at the station.  The agents did not offer Defendant any food or water.  They placed him in a holding cell that had a toilet and blankets on the floor and left him there for three or four hours. Defendant slept on the floor for most of that time.  Defendant testified that he thought he slept for four or five hours.  He was then removed from the cell and asked for food and water, which the agents provided.  The agents asked him questions and filled out a report. Defendant was not handcuffed during the interview.  At some point after his interview, Defendant spoke to DEA Agent Caruso on the phone and told him he was feeling weak and sick. At approximately 2:00 a.m. or 3:00 a.m., the agents gave Defendant the option of being detained at a hospital or released to his wife.  Defendant was permitted to call his wife, who came to a Chevron near the Border Patrol station with Defendant's medications.  The agents released Defendant at the Chevron.

## **ANALYSIS**

Defendant contends that his statements should be suppressed because (1) agents failed to re-administer *Miranda* warnings after transporting Defendant to the station, and (2) Defendant's statement was involuntary.

**A.**     **Agents Were not Required to Re-administer *Miranda* Warnings**

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that prior to custodial interrogation a suspect must be informed of his right to remain silent and his right to have an attorney present. If the suspect invokes either of these rights, interrogation must cease. After being given his *Miranda* warnings, a suspect may waive his rights.   The Supreme Court has eschewed *per se* rules mandating that a suspect be re-advised of his rights in certain fixed situations in favor of a more flexible approach focusing on the totality of the circumstances, specifically whether intervening events which might have given the impression that the defendant's rights had changed in a material way.  *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1128 (9th Cir. 2005) (collecting cases).

In the present case, Defendant was *Mirandized* at approximately 4:00 p.m. and interviewed at the Border Patrol station approximately two hours later.  The two-hour delay between the administration of *Miranda* warnings and the start of questioning is far less than time delays upheld in other decisions in this Circuit.  *See Guam v. Dela Pena*, 72 F.3d 767, 770 (9th Cir.1995) (fifteen hour delay); *Puplampu v. United States*, 422 F.2d 870 (9th Cir.1970) (two day delay); *Maguire v. United States*, 396 F.2d 327, 331 (9th Cir.1968) (three day delay).  The agents who arrested Defendant at the scene also transported and interviewed Defendant;  there were no intervening events which might have suggested to Defendant that his rights had changed.  The agents were not required to re-*Mirandize* Defendant simply because they transported him to the station.  *See Rodriguez-Preciado*, 399 F.3d at 1127 ("Nor is it determinative that there was a change of one interrogator in conjunction with the change of location").  Moreover, Defendant began making statements at the scene and continued to make statements to Agent Ashby during transport; his own behavior does not lend support to a finding that Defendant was lead to believe his rights had changed in a material way once he arrived at the station.  Accordingly, the Magistrate concludes that agents were not required to re-administer *Miranda* warnings to Defendant at the Border Patrol station.

**B.      Defendant's Statement was Voluntary**

A *Miranda* waiver must be made knowingly and voluntarily.  *Id.* at 475; *see Edwards v. Arizona*, 451 U.S. 477, 482 (1981).  The government must prove such a waiver by a

preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). The voluntariness of a post-*Miranda* statement is analyzed in light of its independent surrounding circumstances. *See Oregon v. Elstad,* 470 U.S. 298, 318 (1985). "In evaluating voluntariness, the test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Male Juvenile*, 280 F.3d 1008, 1022 (9th Cir. 2002) (citation and internal quotation marks omitted).

Even when the procedural safeguards of *Miranda* have been satisfied, a defendant is deprived of due process if his conviction is founded upon an involuntary confession. *See Dickerson v. United States*, 530 U.S. 428, 432 (2000). To ensure due process, the test for determining the voluntariness of a suspect's confession is whether, considering all the circumstances, the government obtained the statement by physical or psychological coercion or by inducement so that the suspect's will was overcome. *See United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir. 2001) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)). The circumstances to be considered include: (1) whether there was police coercion; (2) the length of the interrogation, its location and its continuity; (3) whether police advised the suspect of her rights; and (4) whether there were any direct or implied promises of a benefit. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003). "A statement is involuntary if it is extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Id.* (quoting *Hutto v. Ross*, 429 U .S. 28, 30 (1976)). Courts also consider the defendant's age, education, the nature of any questioning, and the use of any physical punishment such as the deprivation of food or sleep to determine voluntariness. *See United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) (*citing Schenckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

The standard of review does not change when the inquiry shifts from the voluntariness of an asserted *Miranda* waiver to the voluntariness of the confession under general Fifth Amendment principles. *See Collazo v. Estelle*, 940 F.2d 411, 415 (9th Cir. 1991). "In short the true test of admissibility is that the confession is made freely, voluntarily, and without

compulsion or inducement of any sort." *Haynes v. State of Washington*, 373 U.S. 503, 513-14 (1963). An officer who attempts to pressure a defendant into changing his mind about remaining silent, and into talking without counsel to his interrogators, violates that defendant's Fifth Amendment rights. *See Collazo v. Estelle*, 940 F.2d 411, 419-20 (9th Cir. 1991).

Defendant's contention that agents coerced his confession by depriving him of food, water and medication and disregarding his medical condition is without support. The agents credibly testified that Defendant did not appear ill at the scene, during transport or at the station. The fact that Defendant was permitted to smoke a cigarette shortly after his arrest suggests, first, that Defendant was not acting ill, and second, that the agents acted considerately toward Defendant. Defendant never asked the agents for medication or told the agents that he was not feeling well. Neither agent was aware of Defendant's medical history until sometime during his interview.[2] Defendant testified that Agent Ashby provided him with water during transport; both agents testified that Defendant was provided with food and water soon after he arrived at the station.

Defendant's testimony regarding his treatment by the agents was not credible. Defendant's testimony that he was placed in the back of Agent Gonzalez' truck was contradicted by the credible testimony of both agents; Agent Ashby testified that he never saw Defendant placed in the truck and Agent Gonzalez testified that the *passenger* of Defendant's vehicle was placed in the truck. Furthermore, the time-line provided by Defendant does not add up: Defendant claimed he was stopped at approximately 4:15 p.m., arrested and placed in the back of the truck for forty minutes, released and interviewed at the scene for 20 to 30 minutes, then transported to the Border Patrol station. The agents offered uncontradicted testimony that the Border Patrol station was approximately 40 minutes away.

---

[2] During the hearing, defense counsel repeatedly questioned both agents about Defendant's handicapped license plates, suggesting that the agents knew that Defendant suffered from a medical condition. Agent Ashby testified that he was not aware of the handicapped license plate; Agent Gonzalez testified that the license plate did not prompt him to question Defendant's medical condition. (TR 26, 36, 56.)

Based on the times provided by Defendant, he should have arrived at the Border Patrol station sometime after 6:00 p.m.  But Defendant testified that he arrived at the station between 5:00 p.m. and 5:30 p.m.  Agent Gonzalez testified that Defendant arrived at the station at approximately 5:30 p.m. or 5:40 p.m.  By Defendant's own testimony, it seems unlikely that he spent 40 minutes in the back of the truck.[3]  Defendant also offered contradicting testimony regarding when he informed the agents of his health problems: on direct examination he testified that he told the agents about his medical conditions when he was released from the truck; on re-direct he testified that he told Agent Gonzalez about his health issues before he was loaded into the back of the truck.

Finally, the Court notes that Defendant's interview was conducted under relatively innocuous circumstances: Defendant was placed in a holding cell for no more than thirty minutes, than interviewed without handcuffs outside the holding cell.  There was no evidence that agents threatened or intimidated Defendant.  The agents consistently testified that Defendant appeared calm and healthy during the interview.

For all the foregoing reasons, the Magistrate recommends that Defendant's Motion to Suppress Statements be denied.

## **RECOMMENDATION**

In view of the foregoing, it is recommended that, after its independent review of the record, the District Court DENY the Motion to Suppress Statements filed on November 22, 2010.  (Doc. 22.)

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation.  If objections are not timely filed, they may be deemed waived.  The parties are advised that any objections filed are to be identified with the following case number: **CR-10-955-TUC-RCC**.

---

[3] Perhaps aware of this inconsistency in his testimony, Defendant later clarified that his time in the truck "felt like" 40 minutes. (TR 91.)

DATED this 17th day of February, 2011.

**CHARLES R. PYLE**
**UNITED STATES MAGISTRATE JUDGE**